UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
WADE F. HALL, et al.,_____)
                               )
          Plaintiffs,          )
                               )     Civil Action No. 03-1764 (GK)
     v.                        )
                               )
NATIONAL RAILROAD PASSENGER     )
CORPORATION, et al.,           )
                               )
          Defendants.          )
_____)
```

MEMORANDUM OPINION

Plaintiffs, Wade F. Hall, Hattie N. McCoy-Kemp, and Victoria F. Staton, are former employees of National Railroad Passenger Corporation ("Amtrak") and participants in Amtrak's Retirement Income Plan for Employees of the National Railroad Passenger Corporation ("Pension Plan" or "Retirement Plan"). They are also current or former participants in Amtrak's Retirement Savings Plan ("401(k) Plan" or "Savings Plan").[1]

Defendants are (1) Amtrak, (2) the Retirement Plan Committee, (3) Warren Reisig, William Herrmann, and Gordon Hutchinson (current Members of the Retirement Plan Committee), (4) the Savings Plan Committee, (5) John Does ##4-10 (unnamed current or former Members of either or both Committees), (6) David L. Gunn, current President/Chief Executive Officer ("CEO") of Amtrak and a Member of Amtrak's Board of Directors, (7) George D. Warrington,

---

[1] The Retirement Plan and Savings Plan are collectively referred to herein as "the Plans."

President/CEO of Amtrak from 1998 until 2002 and (8) Thomas Downs, President/CEO of Amtrak from 1993 until 1997.[2]  Plaintiffs bring this suit under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq..

This matter is before the Court on the Motion to Dismiss Plaintiffs' Second Amended Complaint filed by Amtrak, the Retirement Plan Committee, Reisig, Herrmann, Hutchinson, the Savings Plan Committee, Gunn, Warrington, and Downs (collectively referred to herein as "Defendants").  Upon consideration of the Motion, Opposition, Reply, the parties' supplemental filings of June 28, 2004, and the entire record herein, and for the reasons stated below, Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint is **granted in part** and **denied in part**.

---

[2] On March 1, 2004, Plaintiffs voluntarily dismissed without prejudice the following current and former Members of Amtrak's Board of Directors: (1) Jane Does ##1-10, (2) Sylvia A. DeLeon, (3) David M. Laney, (4) Norman Y. Mineta, (5) Tommy G. Thompson, (6) Michael S. Dukakis, (7) A. Linwood Holton, Jr. and, (8) Amy S. Rosen.  See Pls.' Opp'n to Individual Defs.' Mot. to Dismiss Pls.' First Am. Compl. at 2, n.1.

I.    **BACKGROUND**[3]

A.    **Factual History**

1.    **The July 26, 2001 Voluntary Early Retirement Plan ("VERP")**

Plaintiffs allege that on July 26, 2001, as part of a company-wide downsizing, Amtrak's Board of Directors amended its existing Retirement Plan to include a Voluntary Early Retirement Plan ("VERP") featuring a monthly supplement (referred to herein as the "Railroad Retirement Supplement" or the "Supplement"). See Second Am. Compl. ¶¶ 30, 31, 45.  The July 26, 2001 VERP stated,

> Any management employee 55 years of age or older with 10 or more years of Amtrak service who files retirement papers between September 15 and October 31, 2001 will receive the following retirement package:
>
> (1)   Five years of age added to pension formula; and
>
> (2)   A monthly supplement (equal to railroad retirement annuity) payable until employee is able to commence unreduced railroad retirement annuity benefits.

Id. ¶ 34 (quoting Pl.s' Ex. 3 at 2).  The July 26, 2001 VERP was to be funded entirely "out of Amtrak's Retirement Income Plan Trust ["Trust"], that is, out of the assets of the Pension Plan.  Id. (internal citation omitted).

---

[3] For purposes of ruling on a motion to dismiss, the factual allegations of the complaint are presumed true and liberally construed in favor of the plaintiff.  See Shear v. Nat'l Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979).  Therefore, all facts set forth herein are taken from Plaintiffs' Second Amended Complaint or from the undisputed facts presented in the parties' briefs.

According to Plaintiffs, "[i]mmediately upon receiving the Board's July 26, 2001 approval, management announced the VERP with great fanfare and began a several weeks long campaign to induce employees to take it and retire.  Over the course of the ensuing weeks, eligible employees were repeatedly told about the VERP's terms in great detail -- including the specific terms of the Railroad Retirement Supplement -- and were affirmatively led to believe that this was a promise they could rely upon."  <u>Id.</u> ¶ 46.

### 2. The September 14, 2001 Amendment to Amtrak's Retirement Plan ("2001 Amendment")

Plaintiffs allege that "[b]y early September 2001, Amtrak management realized that far more employees than [it] had originally predicted were intending to elect the VERP.  While management believed that this number of elections would not place the Pension Plan in an underfunded status, it might shorten the 'contribution holiday' that Amtrak enjoyed because of the Pension Plan's overfunding."  <u>Id.</u> ¶ 52.  Because of its concern, on September 14, 2001, management, "either unaware or heedless that [it was] proposing that the Company violate ERISA's anti-cutback rule, [ERISA Section 204(g), 29 U.S.C. § 1054(g),[4]] [] [asked] the

---

[4] ERISA Section 204(g), ERISA's "anti-cutback rule," states, in relevant part,

> The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) or 1441 of this title.

(continued...)

Board to amend the [Retirement] Plan to eliminate the [] monthly Railroad Retirement Supplement and replace it with a [] lump sum payment of $15,000." Id. ¶ 54.  Plaintiffs maintain that, "[a]s part of the proposed new amendment to the Plan, management also explicitly asked the Board to require employees accepting the reduced VERP to sign a release as a condition to their participation in the reduced VERP." Id. at ¶ 56 (citing Pl.s' Ex. 11).[5]  To explain and support this request, management presented the Board with an Executive Summary pertaining to the July 26, 2001 VERP and the proposed new amendment, which explained that,

> if Management proceeded with the plan as originally formulated, [i.e., in accordance with the July 26, 2001 VERP], the surplus in the [Trust] would be depleted and [Amtrak] would be required to make a significant contribution to the [Trust] as early as 2003.  According to the actuary, as a result of a combination of market conditions, additional accrued liabilities and withdrawals, the forecasted surplus in the [Trust] has declined from approximately $42 million in December 2000 to $18.6 million on August 31, 2001.  While Management expects the [Trust] to continue to grow over the long term, it has nevertheless determined that it would be prudent to offer a more modest VERP than originally envisioned and maintain a surplus in the [Trust].  Consequently, Management proposes to eliminate the second component of the plan, the more costly Railroad Retirement supplement, and instead offer a one-time lump sum payment of $15,000.

---

[4](...continued)

29 U.S.C. § 1054(g)(1).

[5] The release purports to "release and discharge Amtrak, members of its Board of Directors, officers and agents and employees from any and all liabilities and claims of any kind or nature," known or unknown.  Second Am. Compl. ¶ 69.

Id.

Plaintiffs allege that management drafted proposed resolutions for the Board members to sign authorizing the proposed new amendment but that "the Board never adopted the proposed resolutions in a manner consistent with the Company's governing statutes, articles of incorporation, by-laws, the terms of the Plan and/or ERISA." Id. ¶ 58. Therefore, according to Plaintiffs, "the original version of the VERP, complete with the Railroad Retirement Supplement as defined by the Board on July 26, 2001, remained and remains today a part of the Pension Plan." Id. Plaintiffs allege, however, that, "[s]ince September 14, 2001 and continuing until today," Defendants have administered the Retirement Plan as if it had been validly amended on September 14, 2001 to eliminate the monthly Railroad Retirement Supplement. Id. ¶ 59.

Based on these facts, Plaintiffs claim that the Retirement Plan Committee "violated, among other fiduciary provisions of ERISA, ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), by administering the Pension Plan in accordance with the September 14, 2001 Amendment which was and is not 'consistent with the provisions of [Title I of ERISA]' and in fact violates ERISA, specifically violating the anti-cutback provisions of ERISA § 204(g), 29 U.S.C. § 1054(g)." Id. ¶ 62. In addition, they maintain that the Retirement Plan Committee "also violated ERISA § 404(a)(1)(A)-(a)(1)(B), 29 U.S.C. § 1104(a)(1)(A)-(a)(1)(B), by preventing

participants from electing the original VERP during the September 15, 2001 - October 31, 2001 window and/or causing participants to believe that they could not elect the original VERP during that window when in fact the original VERP, as adopted by the Board on July 26, 2001, gave participants that right and the September 14, 2001 amendment was a legal nullity that could not affect the availability, as a matter of law, of the original VERP." Id. ¶ 63.

Approximately 75 eligible employees accepted the September 14, 2001 VERP. See id. ¶ 68. Approximately 300 eligible employees declined to accept it. See id. ¶ 76.

### 3. Defendants' alleged failure to appoint a Retirement Plan Committee and a Savings Plan Committee

Under the terms of the Plans, Amtrak's Board of Directors and Amtrak's President were and are "Named Fiduciar[ies]" of the Plans with respect to the appointment of the two respective Committees. Amtrak's President "was and is responsible for the appointment, monitoring and removal of the Members of both Committees." Id. ¶ 21.

Plaintiffs claim that "[f]rom approximately 1995 to October 2003, Messrs. Downs, Warrington and Gunn breached their fiduciary and co-fiduciary duties by failing to appoint or monitor a 'Retirement Plan Committee' in the case of the Pension Plan and a 'Savings Plan Committee' in the case of the 401(k) Plan and by failing to appoint or monitor those persons who were acting in a de

facto but unauthorized fiduciary capacity as Plan Administrator in the Committees' absence." Id.

Plaintiffs contend that Gunn, who is Amtrak's current President and Chief Executive Officer, and a Member of Amtrak's Board, "remains in breach to this day for failing to remove the Plans' current Committee Members -- Messrs. Herrmann, Reisig and Hutchinson -- who are administering the Pension Plan in violation of ERISA and the terms of the Plan (including in violation of ERISA's anti-cutback rule) and/or refuse to administer the Plan in conformance with ERISA and the terms of the Plan (including the statutory anti-cutback rule)[.]" Id. ¶ 22.  According to Plaintiffs, Gunn also remains in breach "for failing to remove those same Defendants who, as Members of the Savings Plan Committee, are also violating their fiduciary duties with respect to, among other things, their duty to decide whether to permit participants to direct the investment of their individual accounts and the selection of the specific 'investment alternatives,' if any, that the Plan is to make available to participants for that purpose." Id. (internal citations omitted).

Plaintiffs maintain that, in the case of the Retirement Plan, the absence of a Retirement Plan Committee left Plan participants "without a fiduciary and advocate" to "prevail upon" Amtrak to "reject management's call to cut the Railroad Retirement Supplement

from the VERP."[6]  Id. ¶ 24.  According to Plaintiffs, "[a] duly appointed Committee/Plan Administrator would have prevented the Railroad Retirement Supplement from being eliminated."  Id.

Plaintiffs also claim that, in the absence of a valid Retirement Plan Committee, the Retirement Plan has, among other things, "spent millions of dollars pursuant to numerous contracts of doubtful validity entered into with a variety of service providers with no one exercising fiduciary oversight on participants' behalves.  The Pension Plan has been mismanaged in numerous other ways causing the Plan injury and loss and depriving participants of their right to a properly administered Plan, compliant with its terms and requirements of federal law."  Id. ¶ 25.

In the case of the Savings Plan, Plaintiffs contend that "the consequences of Defendants' failure to appoint a [Savings] Plan Committee have been no less dramatic."  Id. ¶ 27.  Specifically, Plaintiffs claim that the Savings Plan suffered losses because there was no Savings Plan Committee in place to monitor the

_____

[6] According to Plaintiffs, the Plan Administrator is charged with the job of employing "'an enrolled actuary, an independent certified public accountant and counsel' to, among other things, 'render advice upon request with regard to matters arising under the Plan.'"  Second Am. Compl. ¶ 24 (quoting Pension Plan § 10.03). Plaintiffs claim that, "[t]ogether with a Plan Administrator, these professionals, acting on behalf of participants, may have presented a differing analysis (including an analysis showing that the Supplement was or might well be a protected benefit) that might have caused management to withdraw the proposed cutback in whole or in part or call upon the Board to reject it in whole or in part." Second Am. Compl. ¶ 24 (internal citation omitted).

selection of investment alternatives and determine the appropriate level of participant control over their investments.  Id. ¶ 29.

**B.   Procedural History**

In August 2003, Plaintiffs filed the instant ERISA action.  On January 5, 2004, Plaintiffs filed their First Amended Complaint. On December 1, 2004, they filed their Second Amended Complaint.

In Count I, Plaintiffs allege that Amtrak's Board of Directors amended Amtrak's Retirement Plan on July 26, 2001 to include the Railroad Retirement Supplement, but that the Board failed to take valid action on September 14, 2001 to amend the Plan to eliminate the Supplement.  Accordingly, Plaintiffs contend that whether the Supplement was or was not an ERISA-protected benefit is legally irrelevant, because it was a part of the Plan throughout the September 15 through October 31, 2001 selection window, and Defendants breached their fiduciary duties to Plan participants by administering the Plan as if it was not included.  See id. ¶¶ 82, 83.

In Count II, Plaintiffs claim that, assuming the September 14, 2001 Amendment to the Plan was otherwise valid, it violated ERISA's "anti-cutback rule," i.e., ERISA Section 204(g), 29 U.S.C. § 1054(g), "because it was 'a plan amendment which ha[d] the effect of (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy ... with respect to benefits attributable

to service before the amendment.'"   Id. ¶ 87 (quoting 29 U.S.C. § 1054(g)).

In Count III, Plaintiffs claim that "[b]y failing to appoint, monitor, make appropriate disclosure to, and/or remove Plan Committee Members, or those acting in their place with or without authority to do so, ... Amtrak's current and former Presidents breached their strict ERISA fiduciary and co-fiduciary duties in violation of ERISA § 404(a), 29 U.S.C. § 1104(a), and ERISA § 405(a), 29 U.S.C. § 1105(a)."[7]   Id. ¶ 93.

Plaintiffs seek a certification that this action is a class action pursuant to Federal Rule of Civil Procedure 23.[8]  They also

_____

[7] Plaintiffs bring all three Counts of their Second Amended Complaint against all Defendants.

[8] Plaintiffs purport to bring Counts I and II on behalf of themselves and the "Cutback Class," which they define as

All persons who are or were participants in or beneficiaries of [Amtrak's Retirement Plan] who were eligible to receive benefits under [the July 26, 2001 VERP] but were not allowed to accept [it] due to a September 14, 1001 Plan Amendment and the adherence of the Retirement Plan Committee [] to that September 14, 2001 Amendment.  There are three subclasses: (1) Class members who elected to participate in the amended, reduced September 14, 2001 VERP and signed a release in favor of Amtrak but not the Committee; (2) Class members who did not participate in the amended, reduced VERP and have not signed a release in favor of Amtrak or the Committee; and (3) Class members who did not participate in the amended, reduced VERP and signed a release in favor of Amtrak but not the Committee.

Second Am. Compl. ¶ 96.

Originally, Plaintiffs brought Count III on behalf of
(continued...)

seek multiple forms of monetary, injunctive, and declaratory relief.  See id. at 55-58.

On February 1, 2005, Defendants filed the instant Motion to Dismiss.[9]  On March 21, 2005, Plaintiffs filed a motion to certify the class and appoint class counsel.  As of May 16, 2005, that motion was fully briefed and ready for decision.  On July 25, 2005, however, Plaintiffs filed an amended motion to certify the class and appoint class counsel in light of their voluntary dismissal without prejudice of the Plan-wide aspects of Count III.

## II.  STANDARD OF REVIEW

---

[8](...continued)
themselves, the Plan and the "§ 502(a)(2) Class," which they define as

> All persons who are or were participants in or beneficiaries of [the Retirement Plan] and/or [the Savings Plan] during the period of time there was no validly appointed Retirement Plan Committee in the case of the Pension Plan or Savings Plan Committee in the case of the 401(k) Plan or validly appointed Plan Administrator for either Plan.

Id. ¶ 103.  On July 25, 2005, however, Plaintiffs voluntarily dismissed without prejudice the Plan-wide aspects of Count III. See Docket No. 77.  This dismissal moots Defendants' argument in the instant Motion to Dismiss that Count III of Plaintiffs' Second Amended Complaint should be dismissed as it relates to the Amtrak Retirement Plan because Plaintiffs lack standing to bring this claim.  Accordingly, it is unnecessary for the Court to address Defendants' standing argument.

[9] On February 2, 2005, the Court denied as moot, in light of Plaintiffs' filing of the Second Amended Complaint, the Motion of Amtrak and the Retirement Plan Committee to Dismiss Plaintiffs' First Amended Complaint; the Motion of Individual Defendants Reisig, Herrmann, Hutchinson, Gunn, and Warrington to Dismiss Count III of Plaintiffs' First Amended Complaint; and two other procedural motions related to Plaintiffs' First Amended Complaint. See February 2, 2005 Order.

12

A motion to dismiss should only be granted "when it appears beyond doubt that, under any reasonable reading of the complaint, the plaintiff will be unable to prove any set of facts that would justify relief." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). Because such motions "summarily extinguish litigation at the threshold and foreclose the opportunity for discovery and factual presentation, [they] should be treated with the greatest of care." Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987).

Accordingly, the factual allegations of the Second Amended Complaint must be presumed true and liberally construed in favor of Plaintiffs. Shear, 606 F.2d at 1253.

## III. ANALYSIS

### A. Defendants' Motion to Dismiss Must Be Granted As to Count I of Plaintiffs' Second Amended Complaint because Plaintiffs Have Failed to Exhaust Their Administrative Remedies under Amtrak's Retirement Plan

In Count I, Plaintiffs allege that Amtrak's Board of Directors amended Amtrak's Retirement Plan on July 26, 2001 to include the Railroad Retirement Supplement, but that the Board failed to take valid action on September 14, 2001 to amend the Plan to eliminate the Supplement. Accordingly, Plaintiffs contend that whether the Supplement was or was not an ERISA-protected benefit is legally irrelevant, because it was a part of the Plan throughout the September 15 through October 31, 2001 selection window, and

Defendants breached their fiduciary duties to Plan participants by administering the Plan as if it was not included.  <u>See</u> Second Am. Compl. ¶¶ 82, 83.

Defendants argue that Count I should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for three reasons.  First, they claim that "it erroneously assumes that Amtrak amended the Amtrak Retirement Plan in July 2001[.]"  Def.s' Mot. at 3.  Second, they contend that it "fails to allege with any particularity why the actions of Amtrak's Directors in September 2001 were invalid[.]"  <u>Id.</u>  Third, they allege that it "is a claim for benefits under [ERISA], and this claim fails because plaintiffs have failed to exhaust their administrative remedies under the Amtrak Retirement Plan."  <u>Id.</u>

It is unnecessary to address Defendants' first two arguments because the Court concludes that Count I must be dismissed because Plaintiffs have failed to exhaust their administrative remedies under Amtrak's Retirement Plan.

A claim for breach of fiduciary duty "'is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA.'"  <u>Harrow v. Prudential Ins. Co. of Am.</u>, 279 F.3d 244, 254 (3d Cir. 2002) (quoting <u>Smith v. Sydnor</u>, 184 F.3d 356, 362 (4th Cir. 1999)).  <u>See</u> <u>Spann v. AOL Time Warner, Inc.</u>, 219 F.R.D. 307, 322 (S.D.N.Y. 2003) (same).  In other words, when a plaintiff brings a claim which is

based on the terms of a plan, rather than on substantive rights guaranteed by ERISA, the proper avenue for relief is a claim for denial of benefits, not a claim for breach of fiduciary duty.

"It is well established that, barring exceptional circumstances, plaintiffs seeking a determination pursuant to ERISA of rights under their pension plans must ... exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court." Communications Workers of Am. v. AT&T, 40 F.3d 426, 431 (D.C. Cir. 1994) (internal quotation omitted).  "Because ERISA itself does not specifically require the exhaustion of remedies available under pension plans, courts have applied this requirement as a matter of judicial discretion." Id. at 432.  See Sydnor, 184 F.3d at 361 ("Although ERISA does not explicitly contain an exhaustion requirement, 'an ERISA claimant generally is required to exhaust the remedies provided by the employee benefit plan in which he participates as a prerequisite to an ERISA action for denial of benefits under 29 U.S.C. § 1132.'") (quoting Makar v. Health Care Corp., 872 F.2d 80, 82 (4th Cir. 1989)); Zipf v. AT&T, 799 F.2d 889, 892 (3d Cir. 1986) ("When a plan participant claims that he or she has unjustly been denied benefits, it is appropriate to require participants first to address their complaints to the fiduciaries to whom Congress, in Section 503, assigned the primary responsibility for evaluating claims for benefits.").

In the instant case, Paragraph 83, the only paragraph in Count I to directly address Defendants' alleged basis of liability, states as follows:

> On September 14, 2001 Amtrak management purported to have the Company's Board of Directors enact an amendment to the Pension Plan purporting to eliminate the monthly Railroad Retirement Supplement as originally adopted in the July 26, 2001 VERP, [and] replace it with a less valuable $15,000 lump sum payment.  However, neither on September 14, 2001 or anytime before or after did the Amtrak Board amend the Pension Plan and modify the original terms of the July 26, 2001 VERP.  Nevertheless, in violation of ERISA § 404(a), 29 U.S.C. § 1104(a) (including but not limited to ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D)), since that time, Defendants have been administering the Pension Plan as if the Board had amended the Pension Plan as envisioned by management and have thus <u>interfered with and continue to interfere with the ability of Plaintiffs and the Cutback Class to receive the benefits to which they were and are entitled under the terms of the Pension Plan</u>.  Defendants have further violated their fiduciary duties by misrepresenting to participants that the terms of the original VERP were altered and the Railroad Retirement Supplement eliminated.

Second Am. Compl. ¶ 83 (emphasis added).

It is clear from Paragraph 83 that resolution of Plaintiffs' Count I claims turns on whether Amtrak's Board validly amended the Retirement Plan on September 14, 2001 in accordance with the D.C. Business Corporation Act, D.C. Code § 29-101.136 ("Requirements of action without meeting") and the Plan's own Bylaws, Section 4.12 ("Unanimous Written Consent").  Both provisions state that action taken by a corporate board without a meeting will be valid only "if a consent in writing setting forth the action so taken shall be signed ... by all of the members of the board ..., and such written consent is filed with the minutes of proceedings of ... the board."

16

Id. Resolution of Plaintiffs' Count I claims, therefore, rests on the interpretation and application of the Retirement Plan and its Bylaws, rather than on the interpretation and application of ERISA. Accordingly, the proper avenue for relief is a claim for denial of benefits, not a claim for breach of fiduciary duty.

In that case, Plaintiffs are required to exhaust their administrative remedies under the Retirement Plan. Plaintiffs have, however, effectively conceded that they have failed to do so. Thus, because Plaintiffs have failed to exhaust their administrative remedies under the Retirement Plan, they have failed to allege a cause of action for denial of benefits. Count I of Plaintiffs' Second Amended Complaint must, therefore, be dismissed.[10]

---

[10] Plaintiffs argue that "even if this were a traditional claim for benefits, exhaustion would be futile within the standards set by the Circuit Court of Appeals: Defendants are not about to say that they did not validly amend the Plan. To delay this case another 6 months so Plaintiffs can go through the motions of an administrative process the outcome of which is already known would be pointless."  Pl.s' Opp'n at 41.

"The general rule in this circuit is that the exhaustion requirement 'may be waived in only the most exceptional circumstances.'"  Communications Workers of Am., 40 F.3d at 432 (quoting Peter Kiewit Sons' Co. v. United States Army Corps of Eng'rs, 714 F.2d 163, 168-69 (D.C. Cir. 1983) (internal quotations omitted)).  This Circuit has recognized a discretionary exception to the exhaustion requirement where resort to administrative remedies "'would be futile because of the certainty of an adverse decision.'"  Comm. of Blind Vendors v. Dist. of Columbia, 28 F.3d 130, 133, n.5 (D.C. Cir. 1994) (quoting Randolph-Sheppard Vendors of Am. v. Weinberger, 795 F.2d 90, 105 (D.C. Cir. 1986)).  The futility exception is, however, quite restricted, and has been applied only when resort to administrative remedies is "clearly useless."  Randolph-Sheppard Vendors, 795 F.2d at 105.  Plaintiffs in this case have failed to meet their futility burden.

###### B. Defendants' Motion to Dismiss Must Be Denied as to Count II of Plaintiffs' Second Amended Complaint

In Count II, Plaintiffs contend that, assuming Amtrak's Board took valid action on September 14, 2001 to amend the Retirement Plan to eliminate the monthly Railroad Retirement Supplement, the September 14, 2001 Amendment is otherwise invalid. Specifically, they claim that, once Amtrak's Board adopted the July 26, 2001 VERP containing the Supplement, it could not be "eliminat[ed] or reduc[ed]" by subsequent amendment without violating ERISA's anti-cutback rule, ERISA Section 204(g), 29 U.S.C. § 1054(g), because it was an "early retirement benefit" and/or "retirement-type subsidy" "attributable to service" before adoption of the subsequent alleged September 14, 2001 Amendment. See Second Am. Compl. ¶ 87 (quoting 29 U.S.C. § 1054(g)).

On April 1, 2005, Plaintiffs filed a motion for summary judgment on Count II. As of June 8, 2005, this motion was fully briefed and ready for decision. It is likely that, at the appropriate time, the Court will schedule oral argument on this motion because of the complexity of the issues, as well as the need to reference documents outside of the pleadings. For this reason, the Court concludes that it is more appropriate to decide Count II in the more fullsome context of Plaintiffs' motion for summary judgment. Therefore, Defendants' Motion to Dismiss must be denied without prejudice as to Count II of Plaintiffs' Second Amended Complaint.

**C.  Plaintiffs' Claims Which Accrued More than Six Years before the Instant Suit Was Filed Must Be Dismissed as Time-Barred**

Defendants argue that the claims in Count III of Plaintiffs' Second Amended Complaint which accrued more than six years before the instant suit was filed should be dismissed as time-barred.  See ERISA Section 413, 29 U.S.C. § 1113.[11]  Specifically, they claim that the Court should dismiss Count III to the extent that it addresses alleged losses prior to January 1998 (in the case of Amtrak's Retirement Plan) and December 1998 (in the case of Amtrak's Savings Plan).  Plaintiffs do not object.  See Pl.s' Opp'n at 63.

Defendants also maintain that all claims against Downs, who stepped down as Amtrak's President/CEO in 1997, more than six years before the filing of the instant action, should be dismissed as time-barred.  The Court agrees.

Accordingly, the claims in Count III of Plaintiffs' Second Amended Complaint which accrued more than six years before the

_____

[11] 29 U.S.C. § 1113 states, in relevant part,

No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of --

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation[.]

Id.

instant suit was filed must be dismissed as time-barred.   In addition, all claims against Downs must be dismissed as time-barred.

## IV.   CONCLUSION

Accordingly, for the reasons stated, Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint is **granted in part** and **denied in part**.

An Order will issue with this Memorandum Opinion.


August 5, 2005
                                        /s/
                                        GLADYS KESSLER
                                        U.S. DISTRICT JUDGE